IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR HERNANDO COUNTY FLORIDA
CIVIL DIVISION

TRAVIS GRAVES, individually and
on behalf of others similarly situated,

        Plaintiff,

v.                                  CASE NO.:13-002219-CAAXMX

KABLELINK COMMUNICATIONS, LLC,

        Defendant.
_____/

## COLLECTIVE ACTION COMPLAINT

COMES NOW Plaintiff, TRAVIS GRAVES, individually and on behalf of others similarly situated, by and through his undersigned counsel, and sues the Defendant, KABLELINK COMMUNICATIONS, LLC a Florida corporation, and allege as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages which exceed Fifteen Thousand (15,000.00) Dollars exclusive of costs and interest.

2.    Venue lies within Hernando County because a substantial part of the events giving rise to this claim arose in this Judicial District.

3.    Plaintiff brings this collective action on behalf of himself and all other similarly situated current and former employees of Defendant, to recover compensation and other relief under the Fair Labor Standards Act, as amended (the "FLSA"), 29 U.S.C. § 201 et seq.

1

**PARTIES**

4.     Plaintiff TRAVIS GRAVES, resides in Hernando County, Florida.

5.     Defendant, KABLELINK COMMUNICATIONS, L.L.C., is a Florida corporation, engaged in substantial and not isolated business activities within the State of Florida, including Hernando County, Florida.  At all times material, KABLELINK COMMUNICATIONS, L.L.C., was an employer as defined by the Act.

**FACTS**

6.     Plaintiff began working for the Defendant, KABLELINK in or around December 2010, as a cable installation technician.

7.     Defendant KABLELINK is a sub contractor for Bright House Networks.

8.     Defendant KABLELINK employed cable installation technicians to install cable television, high-speed internet, and internet phone service to residential home customers of Bright House Networks ("Bright House").

9.     Defendant KABLELINK accepted responsibilities to provide cable installation to customers.

10.     Plaintiff and others similarly situated, performed work that fulfilled the responsibilities that Defendant KABLELINK had already assumed.

11.     Defendant KABLELINK at all relevant times, exercised operational control regarding significant aspects of the day-today operations involving Plaintiff and others similarly situated.

12.     Defendant KABLELINK acts as one of Bright House installation providers for Hernando County, Florida.

13.     A significant source of business for the Defendant KABLELINK consists of the cable

2

and internet installation work that it obtains from Bright House.

14.     Each day, Bright House sends the work orders that it receives from its customers to Defendant, KABLELINK.

15.     Defendant KABLELINK in turn, assigns these daily work orders to its installation technicians - the individuals, such as Plaintiff and others similarly situated, who actually perform the installation work.

16.     Before Defendant KABLELINK would assign work orders to a technician, Defendant required the technician to enter into an "Independent Contractor Agreement."

17.     Pursuant to that agreement, the technician agrees to furnish all tools and equipment required to do the installation work; maintain his own general liability insurance; obtain or waive workers' compensation insurance, secure an occupational license; and indemnify Defendant KABLELINK from any losses arising out of the technician's work.

18.     In addition to the "Independent Contractor Agreement," Defendant KABLELINK also requires each of its technicians to form their own company.

19.     Defendant KABLELINK exerted significant control over Plaintiff, and others similarly situated.

20.     Specifically, Defendant KABLELINK controlled Plaintiff and others similarly situated daily work schedule, work performed, the amount of time off from work, and the manner in which work was carried out.

21.     Plaintiff and others similarly situated, were paid by the "piece" for the work that they performed.

22.     Defendant KABLELINK determined Plaintiff and others similarly situated, daily

3

work schedule, the resulting number of hours that Plaintiff and others similarly situated, worked, and the type of jobs that Plaintiff, and others similarly situated, performed.

23.     Defendant KABLELINK required Plaintiff and others similarly situated, to arrive at its place of work at approximately 6:00 a.m. each day; Defendant KABLELINK would then hand Plaintiff and others similarly situated, a list of work orders to perform for the day and they would leave the office at 7:30 a.m., for their first appointment at 8:00 a.m.

24.     Plaintiff and others similarly situated, had no control over the work orders that he received, the types of jobs that he could perform or the order in which he carried out the work orders.

25.     Plaintiff and others similarly situated could only perform work relating only to cable services. Plaintiff and others similarly situated, had to carry out the work orders that Defendant KABLELINK gave them and in the order that Defendant specified.

26.     If a customer requested additional work, or work that differed from what was printed on an existing work order, Plaintiff and others similarly situated, could not accept the new work unless Bright House and Defendant KABLELINK first approved the new work.

27.     Defendant KABLELINK did not permit Plaintiff and others similarly situated, to perform cable installation work for any other cable installation provider.

28.     Plaintiff, and others similarly situated, also had little control over when to perform the work orders or the order in which he choose to carry out the work orders.

29.     When Bright House customers schedule an appointment, they are given a two-hour window in which they must wait for the technician to arrive and start performing the work.

30.     To ensure that its technicians would be able to meet these windows, Defendant KABLELINK assigned its work orders based largely on geographical proximity.

4

31.     Plaintiff and others similarly situated, had no control over this assignment process and was required to meet Bright House customers' time windows. Plaintiff, and others similarly situated, could not re-schedule customer appointments.

32.     Defendant KABLELINK also controlled the amount of time, and the manner in which, Plaintiff and others similarly situated, could take time off.

33.     Defendant KABLELINK would penalize, or at least threatened to penalize, technicians who frequently requested time off, failed to show up each morning at Defendant's office, or failed to attend Defendant's mandatory weekly meetings.

34.     Defendant KABLELINK also supervised, to a significant extent, the manner in which Plaintiff and others similarly situated, carried out their work. Defendant provided Plaintiff, and others similarly situated, with specifications on how his work was to be performed.

35.     If Bright House informed Defendant KABLELINK that it was not satisfied with the manner in which Plaintiff and others similarly situated, performed an installation, Defendant would assess Plaintiff and others similarly situated, with fixed monetary penalties ("charge-backs") based on the type of job performed. Plaintiff and others similarly situated, had no way of disputing or negotiating the amount of a particular charge-back.

36.     Plaintiff and others similarly situated, opportunity for profit or loss did not depend upon his managerial skill.

37.     Plaintiff and others similarly situated, compensation was based simply on the number and type of jobs that Defendant KABLELINK gave him and the quality, quantity, and pace of Plaintiff and others similarly situated, work.

38.     Because Plaintiff and others similarly situated, were paid on a piece work basis,

5

Plaintiff and others similarly situated, opportunity for profit or loss was, in a simplistic sense, a function of the number of jobs he could complete in a finite time frame.

39.     Excluding charge-backs, the more jobs Plaintiff and others similarly situated, could quickly complete, the more Plaintiff and others similarly situated, stood to profit.

40.     Because the types of jobs that Plaintiff and others similarly situated, performed each paid differently, notwithstanding the amount of time it took to complete those jobs, Plaintiff and others similarly situated, would experience days that were more profitable than others simply as a result of the type of work orders that Defendant KABLELINK assigned to him. For example, assuming cable modem installations paid more than television installations, if all the work orders Plaintiff and others similarly situated, received on a given day were for cable modem installations, Plaintiff, and others similarly situated, would make more on that day than if he had been assigned all television installations.

41.     Of course, if cable modem installations took twice as long as television installations, it might be the case that Plaintiff and others similarly situated, could earn the same amount (or more) by just doing television installations throughout the day.

42.     Plaintiff and others similarly situated, had no control over the types of work orders that he was given and, in at least some instances, Defendant KABLELLINK instructed him to leave particular jobs to perform other potentially less profitable jobs.

43.     No matter how quickly or efficiently Plaintiff, and others similarly situated, worked, Defendant KABLELINK's charge-backs, the manner in which it assigned jobs, and the directives it gave to sometimes leave jobs prior to their completion obviated Plaintiff and others similarly situated, ability to rely upon his own managerial skill.

44.     Plaintiff and others similarly situated, did not make any significant investment in capital or employ others.

45.     Although Plaintiff and others similarly situated, provided most of the equipment necessary for performing installations on behalf of Defendant KABLELINK, Plaintiff and others similarly situated, relative investment in that equipment was small.

46.     While Plaintiff and others similarly situated, used their own vehicle (a mini-van) to drive to customer's houses, that vehicle was also for personal use.

47.     Defendant KABLELINK ostensibly gave Plaintiff and others similarly situated, the option to hire others through his own company, but that option was illusory. Plaintiff and others similarly situated, never utilized or substituted others to carry out the work orders that Defendant KABLELINK assigned.

48.     Plaintiff and others similarly situated, work did not require the application of particularly special, or difficult to acquire, skills.

49.     Defendant KABLELINK often assigned experienced technicians to work with new technicians for a one or two week period in order to get new technicians up to speed.

50.     After this short training period, Defendant KABLELINK would start sending the new technicians out into the field.

51.     There was a high degree of permanence in Plaintiff and others similarly situated, relationship with Defendant KABLELINK. For example, Plaintiff worked for KABLELINK for approximately 2.5 years.

52.     Plaintiff and others similarly situated, were not permitted to provide cable installation services for any other cable installation company while they worked for Defendant KABLELINK.

7

53.     Plaintiff and others similarly situated, was expected to show up at Defendant KALELINKS's office each morning, six days a week, and was given work orders that typically amounted to a full day's worth of work.

54.     Plaintiff and others similarly situated, work was clearly integral to Defendant KABLELINKS's business.

55.     In the absence of Plaintiff and others similarly situated, work, and the work of Defendant's other installation technicians, Defendant KABLELINK would not succeed as an ongoing enterprise.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA) – OVERTIME

56.     Plaintiff reallege paragraphs 1-55 as though set forth fully herein.

57.     At all times material hereto, Plaintiff regularly and routinely worked for Defendant KABLELINK in excess of forty (40) hours per work week.

58.     Defendant KABLELINK improperly classified Plaintiff, as an independent contractor.

59.     At all times material, Defendant KABLELINK failed to comply with 29 U.S.C. § 201 et seq., in that Defendant did not compensate Plaintiff at the rate of time and one-half of Plaintiff's regular rate for hours worked in excess of forty (40) hours per week.

60.     Defendant KABLELINK's failure to pay Plaintiff the required overtime pay was intentional and willful.

61.     As a direct and legal consequence of Defendant's unlawful acts, Plaintiff has suffered damages and have incurred, or will incur, costs and attorney's fees in the prosecution of this matter.

WHEREFORE, Plaintiff, TRAVIS GRAVES, respectfully request all legal and equitable

8

relief allowed by law including judgment against Defendant KABLELINK for overtime compensation, liquidated damages, prejudgment interest; payment of reasonable attorney's fees and costs incurred in the prosecution of this claim and equitable relief declaring and mandating the cessation of Defendant's unlawful pay policy and such other relief as the court may deem just and proper.

## COUNT II
## COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA) – OVERTIME

62.   Plaintiff reallege paragraphs 1-55 as though set forth fully herein.

63.   At all times material, Defendant KABLELINK employed numerous individuals who were similarly situated to Plaintiff.

64.   Defendant KABLELINK improperly classified individuals who were similarly situated to Plaintiff, as independent contractors.

65.   Throughout their respective employment, individuals similarly situated to Plaintiff were required to work and did work a substantial number of hours in excess of forty (40) hours per work week.

66.   At all times material, Defendant KABLELINK failed to comply with 29 U.S.C § 201 et seq., in that individuals similarly situated to Plaintiff worked for Defendant in excess of the maximum hours provided by law, but no provision was made by Defendant to compensate such individuals at the rate of time and one-half of their regular rate for hours worked in excess of forty (40) hours per week.

67.   Defendant KABLELINK's failure to pay such similarly situated individuals the required overtime pay was intentional and willful.

9

68. As a direct and legal consequence of Defendant KABLELINK's unlawful acts, individuals similarly situated to Plaintiff have suffered damages and have incurred, or will incur, costs and attorneys' fees in the prosecution of this matter.

WHEREFORE, Plaintiff, TRAVIS GRAVES, on behalf of individuals similarly situated, respectfully requests all legal and equitable relief allowed by law including judgment against Defendant KABLELINK for overtime compensation, liquidated damages, prejudgment interest, payment of reasonable attorneys' fees and costs incurred in the prosecution of the claim and such other relief as the Court may deem just and proper.


DATED: October 23, 2013

FLORIN ROEBIG, P.A.

Christopher D. Gray
CHRISTOPHER D. GRAY, ESQUIRE
FL Bar No.: 902004
Primary:   CDG@FlorinRoebig.com
Secondary: LaborService@FlorinRoebig.com;
              Laura@FlorinRoebig.com
WOLFGANG M. FLORIN, ESQUIRE
Florida Bar No.: 907804
WMF@FlorinRoebig.com
RACHAEL L. WOOD, ESQUIRE
FL Bar No.: 54102
RWood@FlorinRoebig.com
777 Alderman Road
Palm Harbor, Florida 34683
Telephone No.: (727) 786-5000
Facsimile No.: (727) 772-9833
Attorneys for Plaintiff